FILED'10 JAN 14 15:32 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**GERHARD BLASER o/b/o W.R.B., a**
**MINOR CHILD,**

        Plaintiff,

            v.

**MICHAEL J. ASTRUE**, Commissioner,
Social Security Commission,

        Defendant.

Civil No. 09-0149-CL

**Report & Recommendation**

CLARKE, Magistrate Judge.

Plaintiff Gerhard Blaser o/b/o W.R.b. a minor child,[1] ("Plaintiff") brings this action

pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's final decision

denying Plaintiff's claim for Social Security Disability Insurance ("SSD") benefits and

Supplemental Security Income ("SSI") disability benefits. For the several reasons set forth

below, the decision of the Commissioner should be affirmed.

---

    [1] Claimant Ms. Kay Virgene Blaser is deceased. This action is brought on behalf of Mrs. Blaser's surviving minor child.

Report & Recommendation - 1

## I.    Background

Claimant was born on December 23, 1981, and was 21 years old on the alleged disability

onset date of January 1, 2003. (Tr. 30.) She alleges disability based on a combination of

impairments including a learning disability, depression, a personality disorder, and attention

deficit hyperactivity disorder. (Tr. 21, 30; Pl.'s Br. 2.)  Claimant's allegations of disability are

related to mental health problems and learning disabilities.

Plaintiff did not graduate from high school but obtained her GED from the Job Corps

program where she completed her trade of culinary arts. (Tr. 29.)  Her high school records

indicate she received mostly D's or F's and did not meet state-wide standards in reading, math,

writing, or problem solving.  She required special education services for her "disorder of written

expression" and had an individual education plan. (Tr. 299.)

Plaintiff alleges various emotional problems.  She reported being suicidal in the past,

periods of depression, angry outbursts, anxiety, and hostility.  Several mental health professionals

evaluated her over the years.

In 1999, licensed clinical social worker Jeanne Ewen noted that Claimant was depressed

and had trouble concentrating.  Ewen diagnosed an adjustment disorder with depressed mood and

attention deficit disorder.  She gave her a GAF score of 61. (Tr. 450, Pl.'s Br. 4.)

In April 2005, Dr. Gostnell, a clinical neuropsychologist, evaluated her.  She reported

trouble with memory and sustaining concentration for longer than five minutes. (Tr. 322; Pl.'s

Br. 5.)  On her personality inventory test, "she produced a clinical profile that is typically

associated with impaired functioning and substantial distress." (Tr. 329; Pl.'s Br. 6.)  Her IQ test

score was 85. (Tr. 327; Pl.'s Br. 6.)  Dr. Gostnell opined,

[f]rom a strictly intellectual and neurocognitive perspective, Kay certainly has the capacity for productive employment. From a behavioral and personality functioning perspective, however, she is clearly demonstrating substantial employment barriers. She lacks fundamental work behaviors, e.g. reliability, responsibility, and basic social skills, that are essential for any form of employment. Until these problems and their underlying personality dynamics are addressed with appropriate intervention, there appears to be no good foundation for further investment in vocational services for this client.

(Tr. 331; Pl.'s Br. 6.)

Plaintiff was also evaluated by Dr. LeBray, a state agency psychologist, who completed a

mental residual functional capacity assessment in July 2005. He determined that Plaintiff had

mild limitations in activities of daily living, moderate limitations in maintaining social

functioning, and moderate limitations in maintaining concentration, persistence, and pace. (Tr.

410; Pl.'s Br. 6.) He noted in his functional capacity assessment:

The clmt retains the ability to understand, carry out and follow simple one to two step commands, direction and instructions. Is not able to carryout or follow more complex tasks or demands of the job. . . . the clmt can sustain, concentrate, attend, keep pace and persist in the above tasks for up to two hours at a time with normal rest periods and breaks. Tasks should be infrequently rushed/speeded (paced). The clt can work with supervision and co-workers to learn tasks and work on [her] own. It will be beneficial if employer uses multiple methods for training such as hands-on demonstration, verbal instructions and written instructions. She is able to work with co-workers on an occasional basis but will do better if work with one or two on a frequent basis. Does better if [has] her own work station or environment. Does not require supervision. . . .Clmt is limited in closely engaging public, and should have minimal routine coworker contact. Supportive lay supervision (not overly critical/harsh) advised due affective distress and traits. . . . Set routine(s) to follow [()few changes), nonhazardous setting (relapse risk, alcohol), and help setting realistic goals advised (voc guidance)

(Tr. 416.)

Plaintiff was also evaluated by Dr. Starbird, a licensed psychologist, in October 2005.

Dr. Starbird found Plaintiff's behaviors to be consisted with Dr. Gostnell's opinions. She

Report & Recommendation - 3

commented that Plaintiff

> is an unreliable historian.  There were inconsistencies between what she reported
> to this examiner and what she reported to Dr. Gostnell in February of 2005.  Ms.
> Blaser tended to externalize blame and at the same time over-state personal
> problems.  Dr. Gostnell observed that her scores on personality measures
> suggested a response bias toward "exaggeration of problems and complaints."
> This is consistent with her score of 51on the Beck Depression Inventory II.

(Tr. 518.)

In October 2007, Eileen Masover of the Clackamas County Community Heath Division

Behavioral Health completed the Brief Assessment and Clinical Formulation for Plaintiff.  She

determined that her GAF was 50 – a score which indicates an individual will likely experience

great difficulty functioning in the workplace.  (Tr. 586; Pl.'s Br. 7-8.)

Dr. Henry, however, opined that given the desired stimulus, Plaintiff was able to

concentrate.  "[S]he can sustain her focus all day watching movies, yet is [sic] she were not

interested in an activity she could not attend/concentrate for long periods."  (Tr. 520.)

Plaintiff filed applications for SSI and SSD on June 7, 2005.  Her applications were

denied initially and upon reconsideration.  Plaintiff requested a hearing before an administrative

law judge ("ALJ") of the Social Security Administration ("SSA").  A hearing before ALJ Riley

Atkins was held on March 24, 2008.

Patricia Ayerza testified as a vocational expert ("VE").  Ms. Ayerza explained that

occupations of janitor, laundry worker, hand packager, and kitchen helper were all appropriate

occupations for an individual who had no exertional limitations but  would work best in a simple,

routine, repetitive work environment with no public contact, as the ALJ described.  (Tr. 85.)

The ALJ asked,

Report & Recommendation - 4

> If I were to modify my original hypothetical that I gave you, again, as I've noted, simple routine, repetitive work with no public contact, if I were to add to that, because of attention and concentration deficits, suffering on an occasional basis, i.e. up to one third of the work day . . . that can rise to a marked level on an occasional basis . . . could such an individual sustain employment in either the prior work or the other work you've recited?

(Tr. 89.)   The VE explained that an individual in such hypothetical could not perform the jobs.

She clarified in response to Plaintiff's attorney's question about an individual who had anger

issues:

> one thing I can say is that these jobs do not require, as you said, any contact with the public, and very minimal contact with other coworkers, so there really isn't much opportunity to interact with other coworkers. There is occasional supervisory contact, although the abilities needed to [do] the job are very limited, and they are basically learned with a very short demonstration, so if the person is totally unable to be around other people and will act out, you know, unprovoked, and cannot even respond to, you now, basic feedback, constructive feedback from a supervisor, than I would say they can't do the job, these jobs or any other kind of unskilled employment that I know about.

(Tr. 93.)

ALJ Atkins issued a decision finding Plaintiff not disabled on May 29, 2008.  (Tr. 13-31.)

Plaintiff timely requested that the Appeals Council review the decision.  The Appeals Council

denied the request on December 4, 2008.  (Tr. 6-9.)  The ALJ's May 2008 decision was thus the

final order of the SSA.

## II.    Standards

This Court must affirm the Commissioner's decision if it is based on the proper legal

standards and the findings are supported by substantial evidence in the record.  Hammock v.

Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co.</u>

<u>v. NLRB</u>, 305 U.S. 197, 229 (1938)).  The Court considers the record as a whole and weighs

"both the evidence that supports and detracts from the [Commissioner's] conclusion." <u>Martinez</u>

<u>v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than

one rational interpretation, the Commissioner's conclusion must be upheld.  <u>Sample v.</u>

<u>Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts

in the testimony are functions solely of the Commissioner, <u>Waters v. Gardner</u>, 452 F.2d 855, 858

n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the

record and supported by substantial evidence.  <u>Ceguerra v. Sec'y of Health & Human Servs.</u>, 933

F.2d 735, 738 (9th Cir. 1991).  The findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even where findings are

supported by substantial evidence, "the decision should be set aside if the proper legal standards

were not applied in weighing the evidence and making the decision." <u>Flake v. Gardner</u>, 399 F.2d

532, 540 (9th Cir. 1968); <u>see also</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).  Under

sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and

transcript record, a judgment affirming, modifying, or reversing the decision of the

Commissioner, with or without remanding the case for a rehearing.

**III.    Commissioner's Decision**

The initial burden of proof rests upon the claimant to establish disability.  <u>Howard v.</u>

<u>Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate

an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §
423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled.
Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial
gainful activity."  Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).  In the
present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since
January 1, 2003, the alleged onset date.  (Tr. 23.)

In step two, the Commissioner determines whether the claimant has a "medically severe
impairment or combination of impairments."  If the Commissioner finds no medically severe
impairment, the claimant is deemed not disabled.  If the Commissioner finds a severe impairment
or combination thereof, the inquiry moves to step three.  Yuckert, 482 U.S. at 140-41; 20 C.F.R.
§§ 404.1520(c)), 416.920(c)).  Here, the ALJ found that Plaintiff had the following severe
impairments: personality disorder NOS, depressive disorder NOS versus dysthymic disorder,
alcohol dependence versus alcohol abuse, and attention deficit hyperactivity disorder. (Tr. 23.)
Accordingly, the inquiry moved to step three.

Step three focuses on whether the impairment or combination of impairments meets or
equals "one of a number of listed impairments that the [Commissioner] acknowledges are so
severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§
404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the
analysis proceeds to step four.  Yuckert, 482 U.S. at 141.  In this case, the ALJ found that
Plaintiff did not have an impairment or combination of impairments that meets or equals one of

Report & Recommendation - 7

the listed impairments. (Tr. 21.)

In step four, the Commissioner determines whether the claimant has the residual functional capacity (RFC) to perform her "past relevant work." 20 C.F.R. § 404.1560(a). The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. SSR 96-8p. "Past relevant work" refers to work that "was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). It does not consider "off-and-on" work during that period. Id. If she can perform past relevant work, then the Commissioner finds the claimant "not disabled." If the claimant cannot perform past relevant work, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The ALJ found that Plaintiff had the following exertional and nonexertional limitations: "the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, repetitive work with no public contact." (Tr. 21.) The ALJ found that Plaintiff could not perform any past relevant work. (Tr. 30.)

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the claimant is deemed disabled. Here, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 30.) He determined that the Plaintiff has not been under a disability from January 1, 2003, through the date of the decision, May 29, 2008.

Report & Recommendation - 8

**IV.    The Commissioner's Decision Should Be Affirmed**

Plaintiff asserts that the ALJ's decision should be reversed and remanded for benefits because it is not supported by substantial evidence and because it is based on the application of improper legal standards.  Plaintiff argues that:

(1)    the ALJ failed to fully and fairly develop the record.

(2)    the ALJ improperly rejected the Plaintiff's testimony.

(3)    the ALJ improperly rejected lay witness statements.

(4)    the ALJ failed to follow SSR 96-6p and did not properly assign weight to Dr. LeBray's opinion.

(5)    the ALJ provided an incomplete hypothetical to the VE.

(6)    the ALJ's Step 5 determination is not supported by substantial evidence.

**A.    The ALJ Fully and Fairly Developed the Record**

Plaintiff argues that the ALJ did not meet his duty to fully and fairly develop the record because the ALJ did not request medical source statements from either of Plaintiff's examining psychologists.  (Pl.'s Br. 12.)

"'In Social Security cases the ALJ has a special duty to fully and fairly develop the record and assure that the claimant's interests are considered.'  This duty exists even when the claimant is represented by counsel."  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); 20 C.F.R. § 416.1444.

Remand may be necessary when the record does not contain relevant facts and history to assist the ALJ to fairly make his decision.  "In deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner

for further development of the evidence is appropriate.  That is, when 'further findings would so plainly help to assure the proper disposition of [the] claim, we believe that remand is particularly appropriate.'"  Butts v. Barnhart, 388 F.3d 377, 385-86 (2nd Cir. 2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2nd Cir. 1999)).  In Thorne v. Califano, the court remanded the case because there was no opinion evidence as to whether Thorne was employable in the year in question. 607 F.2d 218, 220 (8th Cir. 1979).  Remand has also been appropriate when the evidence is ambiguous or the ALJ finds that the record is inadequate for a proper evaluation. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen, 80 F.3d at 1288).

The Code of Federal Regulations ("Regulations") explain that medical reports to support evidence of impairment should include "a statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section . . . . Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete."  20 C.F.R. § 404.1513(b)(6).

Plaintiff argues that the ALJ has a duty to request a medical source statement from either of the examining psychologists, Drs. Gostnell and Starbird.  Relying solely on the statements from Dr. LeBray, he argues, was in error.  (Pl.'s Br. 12.)  Defendant argues, on the contrary, that the ALJ developed the record to the extent necessary and considered only evidence that was supported by the record.  (Def.'s Resp. 13.)

The Court agrees with the Defendant.  While the ALJ may not have requested or obtained medical statements that conform to § 404.1513(b)(6) from the examining psychologists, he did consider their other reports when making his decision.  (See Tr. 27.)

Report & Recommendation - 10

Regulations clearly state that the lack of a medical source statement does not make the record incomplete. The ALJ did not request further information from them because, presumably, he did not believe it was necessary to complete the record. Defendant explained, "[t]he evidence in the medical record was sufficient to allow adequate assessment of the severity of Plaintiff's impairments and functional limitations." (Def.'s Br. 15.) Citing Bayliss v. Barnhard, 427 F.3d 1211, 1217 (9th Cir. 2005), Defendant concludes,

> [b]ecause the ALJ "found evidence adequate to make a determination regarding the [claimant's] disability" and this finding has support in the record, "the ALJ did not have a duty to recontact the doctors."

(Def.'s Br. 15.)

Plaintiff has not shown that the record was incomplete or ambiguous, and there was no error.

### B.    The ALJ Did Not Improperly Reject Plaintiff's Testimony

In rejecting the claimant's testimony, the Commissioner must perform a two stage analysis of claimant's evidence. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); see also Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). First, the ALJ must determine that the claimant has met the threshold test of producing objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. Smolen, 80 F.3d at 1281. There must be no evidence of malingering. Id. Here, the ALJ found, "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. 26.)

Under the second part of the analysis, the Commissioner analyzes the credibility of the claimant's testimony regarding the severity of claimant's symptoms. Smolen, 80 F.3d at 1281.

Report & Recommendation - 11

The Commissioner can reject a claimant's symptom testimony only if he provides clear and convincing reasons for doing so and makes specific findings. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284.

The Ninth Circuit explained that the ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once that determination is made, the court defers to the ALJ. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." Batson v. Barnhart, 359 F.3d

Report & Recommendation - 12

1190, 1195 (9th Cir. 2004).

Here, the ALJ questioned the Claimant's credibility. "[T]he claimant's statements concerning the intensity, persistency, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 27.)

Though Plaintiff argues that the ALJ did not provide clear and convincing reasons to reject the testimony, the Court disagrees. The ALJ found several inconsistencies among reports from various providers about Claimant's condition. Dr. Gostnell noted her affective tone "was inconsistent with a clinical depression" and that she had marginal grooming and hygiene. (Tr. 326.) In a later 2008 evaluation, she was described as having good hygiene. (Tr. 567.) Dr. Starbird also noted inconsistencies. (Tr. 518.)

In addition, the ALJ explained, "the claimant's level of daily functioning presented a picture of an individual who was less impaired than she alleged." (Tr. 27.) He also pointed out that although Plaintiff's father helped her manage her finances, Plaintiff was able to use public transportation and at one point was compensated for childcare services. (Tr. 27.)

From the record, the ALJ also concluded that Plaintiff exaggerated her complaints. "As noted by Dr. Gostnell, the Claimant's Personality Assessment Inventory (PAI) results were of dubious validity, not only due to inconsistent responses to items of similar content, but due to a possible intentional response toward exaggeration of problems and complaints. In October 2005, Dr. Starbird noted the claimant "externalized blame and over-stated personal problems." (Tr. 27.) Dr. Starbird specifically stated, "Ms. Blaser is considered an unreliable historian. There were inconsistencies between what she reported to this examiner and what she reported to Dr. Gostnell in February 2005. Ms. Blaser tended to externalize blame and at the same time over-

Report & Recommendation - 13

state personal problems." (Tr. 518.) Dr. Starbird agreed with Dr. Gostnell that Claimant's scores

indicated a response bias toward exaggeration of problems and complaints. (Tr. 518.)

The record also contained evidence that Plaintiff's employment barriers were not as

severe as Claimant asserted. Dr. Henry also completed a mental summary report of Claimant at

the time she requested reconsideration. He provided his opinion about other doctor's analyses of

Claimant. Specifically, he found it inconsistent for Dr. Gostnell to assert that the Claimant had

the employment barriers of reliability and responsibility when the Claimant, at that time, was

caring for a 3 year old. Dr. Henry also noted

> [Claimant] also reported she can sustain her focus all day watching movies, yet is
> [sic] she were not interested in an activity she could not attend/concentrate for
> long periods. Thus, reliability and responsibility appear to be volitional vs.
> personality disorder cannot be determined, yet since there is demonstration by
> function of ability to be reliable and responsible for a 3 year old, Dr. Gostnell's
> opinion regarding barriers to employment due to lack of responsibility, reliability
> or social skills cannot be given decisional weight.

(Tr. 520.)

The ALJ also had evidence that claimant, at some level, was untruthful. The ALJ

believed that Claimant misrepresented why and when her father cared for her child. She stated it

was in the evening, and he stated it was when she was outside the house drinking. For the ALJ,

this "misrepresentation of the situation harms her credibility." (Tr. 27.)

Plaintiff argues that the ALJ's reasons are not clear and convincing and offers a different

conclusion of the doctors' evaluations. Plaintiff argues that Claimant's impairment "causes her

involuntarily to experience symptoms at a level greater than is normal." (Pl.'s Br. 14.) Plaintiff

also argues, "[t]hese two examining psychologists [Drs. Starbird and Gostnell] made it clear

Claimant's irresponsible, immature behavior was a part of her mental illness and not an

Report & Recommendation - 14

intentional shortcoming on her part." (Pl.'s Br. 14.)

To this point, Plaintiff notes that Dr. Gostnell did qualify his assessment of Claimant's PAI. "There are also signs of specific denial in regard to drinking and drug use, as well as a response bias, perhaps intentional, toward the exaggeration of problems and complaints. It is likely, therefore, that her clinical scales may over-represent her actual level of psychopathology. Even taking this into consideration, she produced a clinical profile that is typically associated with impaired functioning and substantial distress." (Tr. 596.)

In addition, Plaintiff argues that Claimant's responsibility and reliability is not bolstered but reduced by her former living situation. Plaintiff argues, "[t]he commissioner and the ALJ ignored that this roommate situation was only for a short time and ended when Claimant had a misunderstanding and was asked to move out. Far from demonstrating the capacity for sustained work-life activities, this incident demonstrates that the now-deceased claimant lacked the capacity for sustained appropriate social interactions." (Pl.'s Reply 3.)

Even if the Court agrees with Plaintiff that her mental illness could impact how she experiences symptoms, the question is whether the evidence reasonably supports confirming the ALJ's decision. See Batson, 359 F.3d at 1195. Here, the ALJ found several inconsistencies in the record as a whole that undermined the claimant's credibility. The Court finds his assessment rational and defers to the ALJ's credibility determination.

## C.    The ALJ Did Not Improperly Reject Lay Witness Statements

Plaintiff contends that "the ALJ's failure to base his rejection of lay witness statements on the record and to give specific and legitimate reasons germane to each witness is reversible error." (Pl.'s Br. 18.) Defendant argues that Mr. Blaser's and Mrs. Blaser's statements were

properly rejected because they were either contradicted in the record or unsupported by the

record.  (Def.'s Br. 9.)

The Commissioner will consider non-medical sources to evaluate the severity of the

impairment, such as testimony from spouses and other family members.  20 C.F.R. §

404.1513(d)(4).

> When the claimant indicates that pain is a significant factor of his/her alleged
> inability to work, and the allegation is not supported by objective medical
> evidence in the file, the adjudicator shall obtain detailed descriptions of daily
> activities by directing specific inquiries about the pain and its effects to the
> claimant, his/her physicians from whom medical evidence is being requested, and
> other third parties who would be likely to have such knowledge.

SSR 88-13 at *3.    In Sprague v. Bowen, the court found that testimony of claimant's daughter

and friend is fully competent to substantiate the doctor's diagnosis.  The court concluded,

"[d]isregard of this evidence violates the Secretary's regulation that he will consider observations

by non-medical sources as to how an impairment affects a claimant's ability to work. . . .

Descriptions by friends and family members in a position to observe a claimant's symptoms and

daily activities have routinely been treated as competent evidence." 812 F.2d 1226, 1232 (9th Cir.

1987) (citing 20 C.F.R. § 404.1513(e)(2)).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take

into account, unless he or she expressly determines to disregard such testimony and gives reasons

germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing

Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996)).  In evaluating lay witness opinions, "it

would be appropriate to consider such factors as the nature and extent of the relationship,

whether the evidence is consistent with other evidence, and any other factors that tend to support

or refute the evidence." SSR 06-03p at *6.

In Greger v. Barnhart, the court affirmed the ALJ's decision to reject lay witness testimony. The ALJ concluded that the witness statements were inconsistent with claimant's presentations to his doctors and noted the witness's "close relationship," which may have influenced her desire to help the claimant. The court concluded, "[t]he ALJ's reasons for doubting [the witness's] credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony." 464 F.3d 968, 972 (9th Cir. 2006).

However, the court in Dodrill v. Shalala clarified that lay witness testimony has its place in the ALJ's decision when the witness can provide independent observations:

> [t]hat the ALJ dismissed all the lay witness testimony solely because he found that the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms. . . . An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some wait. If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.

12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ determined that statements from Claimant's father Mr. Blaser and step-mother Mrs. Blaser were not consistent with the record on the whole. He gave several reasons for disregarding portions of their statements and testimony.

Generally Mr. Blaser asserted that his daughter was not reliable and  could not handle the responsibilities of basic employment. As the ALJ summarized, "[Mr. Blaser] described his daughter as a very immature individual who wanted to be treated like a child and who did not like to be criticized. He believed that she could not be trusted with a job." (Tr. 28.)

The ALJ found that the record, on the whole, conflicted with Mr. Blaser's testimony. He believed that the testimony did not take into account Claimant's exaggeration of symptoms. First, the ALJ did not ascribe much weight to Mr. Blaser's 2005 report because at that time, Mr. Blaser regularly spent only one hour a week with Plaintiff. (Tr. 28.)

Second, the ALJ interpreted Plaintiff's drinking behavior as an indication of decision-making ability that was inconsistent with Mr. Blaser's description. While the ALJ acknowledged that her substance use was a severe impairment such that it did interfere with her life (tr. 24), he noted that she could be relied on to take some responsibility for her actions and exercise good choices: "her decision to stay over at a friend's home rather than drive home drunk shows the claimant is able to exercise judgment and make decisions to engage in appropriate conduct." (Tr. 29.)

Third, the ALJ believed the Plaintiff showed responsible behavior in the past and proved she can be reliable for employment. He notes that at the time Plaintiff was evaluated by Dr. Gostnell, she "was able to show responsibility and reliability by her care for [roommate's 3 year old child] for long periods of time." (Tr. 28. ) The ALJ also cites Plaintiff's Job Corps evaluation and her completion of the culinary arts trade as evidence of employability. "The Job Corps records revealed the claimant maintained her attendance and that she did not require more than normal rest periods or breaks." (Tr. 29.) Shari Wiltshire, the Student Record Coordinator, explained that Plaintiff only needed normal supervision, responded appropriately to directions, and maintained acceptable relationships with other students. She was not aware of any medical of psychological problems that interfered with the Plaintiff's abilities. (Tr. 29, 177-78.)

The ALJ used similar reasoning when he considered Mrs. Blaser's testimony. Mrs. Blaser

Report & Recommendation - 18

described Claimant as easily depressed and frustrated. She also described her as childish and unable to comprehend the future. (Tr. 29.) Though he found her to be honest, the ALJ believed Mrs. Blaser did not account for Claimant's "pattern of exaggeration or the functional abilities the claimant showed during her participation in the Job Corps program." (Tr. 29.)

Plaintiff views the record differently, believing that it supports Mr. and Mrs. Blaser's testimonies. Plaintiff believes that the ALJ's conclusion of the Job Corps records and performance is incorrect because he did not discuss Job Corps medical records and mental health evaluations that revealed Claimant's many problematic behaviors. "The record contains multiple counseling referrals and reports from Claimant's time in Job Corps, detailing Claimant's angry outbursts, immature behavior, conflicts with others, a suicide threat involving a kitchen knife, disruptive behavior, inappropriate sexual language and behavior and use of 'baby talk' when confronted." (Pl.'s Br. 17.)

Also, because Plaintiff believes Claimant was improperly discredited for exaggeration of symptoms, Plaintiff argues that Mr. and Mrs. Blaser, cannot be discredited for the same reasons. "These records, when combined with all of the other medical evidence in the record, show conclusively that Claimant's behavior was not a choice, but a deep-rooted symptom of her mental illness dating back to her childhood." (Pl.'s Reply 4.)

Plaintiff has shown only that Plaintiff and Defendant have differences of opinion in interpreting the record. However, the ALJ needs only to give reasons that are germane to the witness and did so here. He explained that although he may agree that Plaintiff acted immaturely, "immaturity is not an impairment and immaturity is not a basis upon which to grant disability benefits." (Tr. 29.) The ALJ opined, "the well-intentioned support [Mr. Blaser] and

Report & Recommendation - 19

his wife provide, as well as public assistance, to the claimant appears to have allowed her to avoid responsibility concerning employment and even the care of her child." (Tr. 29.)

### D.     The ALJ Properly Applied SSR 96-6p

Plaintiff argues that the ALJ erred because he did not include a limitation of "occasional co-worker contact" in Claimant's RFC or hypothetical.

Social Security Ruling 96-6p explains the role of "findings of fact made by State agency medical and psychological consultants and other program psychologists regarding the nature and severity of an individual's impairment(s)." An ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions." SSR 96-6p at *1.

The ALJ clearly stated in his decision that the RFC has its foundation on the entire record, "but particularly on the mental residual functional capacity of the assessment performed by Peter LeBray, Ph.D." (Tr. 26.) Dr. LeBray explained, "the claimant retained the ability understand, carry out and follow simple one to two step commands, directions, and instructions, but was not able to carry out or follow more complex tasks or job demands. . . . the claimant was limited in closely engaging public, and should have minimal routine coworker contact." (Tr. 416.) However, the ALJ's RFC only noted "no public contact" and did not address the co-worker interaction. (Tr. 26.)

The ALJ "considered all symptoms and the extent to which these symptoms can reasonably accepted as consistent with the objective medical evidence." (Tr. 26.) As previously discussed, the ALJ questioned Claimant's credibility on intensity, persistence, and limiting effects of her symptoms and concluded the allegations were inconsistent with her RFC. He determined Claimant did not need the limitation of occasional co-worker contact and points to

Report & Recommendation - 20

Dr. Henry's mental assessment for support. (Tr. 28.) Dr. Henry noted, " . . . if she were not interested in an activity, she could not attend/concentrate for long periods of time. Thus, reliability and responsibility appear to be volitional as well as related to personality disorder." (Tr. 520.) The ALJ properly tailored the RFC to only the limitations he believed were consistent with the record.

### E.    The ALJ Provided an Accurate Hypothetical to the VE

Plaintiff argues that "minimal co-worker contact" should have been included in the hypothetical to the VE. The ALJ may rely on the testimony of a vocational expert that is elicited with a hypothetical question that sets forth all the limitations of the claimant. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The assumptions in the hypothetical question must be supported by substantial evidence. Id. The ALJ may not incorporate limitations or restrictions that are not supported by the record. SSR 96-8p at *2. A hypothetical which fails to include all of a claimant's limitations does not constitute substantial evidence. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). The hypothetical must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical question' but only 'if the question accurately portrays the [plaintiff's] individual physical and mental impairments." Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3rd Cir. 1984).

Even if the Court found that the co-worker limitation should have been included, this error would have been harmless. The VE testified regarding the occupations: "these jobs do not

Report & Recommendation - 21

require . . . any contact with the public, and very minimal contact with other coworkers, so there

really isn't must opportunity to interact with other coworkers." (Tr. 93.)

As previously explained, the ALJ did not find that the record supported a co-worker

contact limitation, and the Court deferred to the ALJ's decision. Accordingly, the ALJ's

hypothetical was not erroneous and accurately portrayed Claimant's limitations.

**F.     Step 5 Occupation Determinations Are Supported by Substantial Evidence**

Plaintiff asserts that the step 5 occupations are incompatible with Claimant's RFC, and

the Defendant disagrees.

The ALJ determined that Claimant had the residual functional capacity "to perform a full

range of work at all exertional levels but with . . . nonexertional limitations:  simple, routine,

repetitive work with no public contact." (Tr. 26.)  As previously discussed, the ALJ explained

that his "determination . . . has its foundation on the entire record, but particularly on the mental

residual functional capacity assessment performed by Peter LeBray, Ph.D." (Tr. 26.)   In his

report, Dr. LeBray explained that Claimant was not able to carry out or follow more complex

tasks or job demands. (Tr. 26.)

The VE testified that Claimant could perform medium unskilled occupations including

janitor, laundry worker, hand packer, and kitchen helper. (Tr. 31.)  The VE confirmed that her

opinion was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 89.)   The

positions of janitor, laundry worker, hand packer, and kitchen helper all require a GED reasoning

level of 2.  The DOT defines GED Level 2: "apply commonsense understanding to carry out

detailed but uninvolved written or oral instructions.  Deal with problems involving a few

concrete variable in or from standardized situations."  Regulations define unskilled work as

Report & Recommendation - 22

"work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568(a).

Plaintiff argues that according to her RFC, Claimant is only capable of Level 1 jobs and that the decisions that jobs requiring a reasoning level higher than Level 1 are not based on substantial evidence.

> Because the ALJ expressly found Claimant is limited to simple, routine tasks, and specifically found this was based on the opinion of Dr. LeBray who opined Claimant was capable of no more than one or two step tasks, the ALJ's finding that Claimant could have performed these occupations is inconsistent with the ALJ's own RFC finding.

(Pl.'s Br. 19.)   Plaintiff argues that because Dr. LeBray stated Claimant could not handle "more complex tasks" then she cannot handle detailed instructions.

Plaintiff's argument goes too far.  Defendant cautions against drawing "strict parallels between the language used in the DOT to describe reasoning development and language used in a Social Security proceeding," (Def.'s Br. 17)  and the Court agrees.  Definitions of "complex" and "detailed" can vary greatly, and it would be improper to make a blanket assumption that the ALJ and Dr. LeBray specifically intended to tie Claimant's RFC with the definitions in the DOT.

The VE was informed of Claimant's work and educational history and testified that these occupations were appropriate.  Plaintiff has not provided evidence to the contrary.  The ALJ's decision at step 5 is supported by substantial evidence.

## V.    Conclusion

The commissioner's decision should be affirmed. the ALJ made his decision based on a fully and fairly developed record.  He properly discredited the claimant's credibility and lay

Report & Recommendation - 23

witness testimony.  He properly applied the relevant regulations and his decision is based on substantial evidence.

## VI.    Recommendation

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be affirmed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge.  *Objections to this Report and Recommendation, if any, are due by February 1, 2010.  If objections are filed, any response to the objections are due within 17 days of service of the objections, see* Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___14___ day of January, 2010.

MARK D. CLARKE
United States Magistrate Judge

Report & Recommendation - 24